HAWTHORNE, Justice.
Pursuant to a judgment of the district court of Winn Parish decreeing a partition, the sheriff of the parish sold at public auction a 360-acre tract of land to Tremont Lumber Company, the last and highest bidder, for $39,500.[1] The controversy here involves the distribution of only one-sixth of the proceeds of this sale. The claimants are on the one part Dr. John T. Mosley and Dr. S. R. Jenkins, and on the other part W. R. Noah. From a judgment rejecting his claim W. R. Noah has appealed.
The property which was partitioned by licitation pursuant to the judgment of the district court was owned originally by S. B. Harper, Sr. Harper died, and the ownership of the property became vested in his widow and three children — S. B. Harper, Maud Harper, and Mrs. Ruth Harper Harkrider. The widow conveyed her one-half interest in the tract to W. R. Noah, who had married the daughter of S. B. Plarper. S. B. Harper lost his one-sixth interest in the property by foreclosure proceedings instituted by the Olla State Bank, and Maud Harper conveyed her one-sixth interest to Dr. John T. Mosley. The judgment ordering the sale to. effect a partition recognized the following parties to be owners in indivisión of *49 the property in the proportions set out by their names:
Olla State Bank — Y&
John T. Mosley — Y&
Ruth Harper Harkrider — Ys
W. R. Noah — Yi
During the time the property was being advertised for sale by the sheriff, S. B. Harper arranged with the Olla State Bank for it to deed its one-sixth interest to his son-in-law, W. R. Noah, and on July 6, 1957, the date of the partition sale, a deed was executed in accordance with this arrangement for a cash consideration of $4,000. Harper also approached his sister, Mrs. Harkrider, one of the other co-owners, but she refused to sell her share in this estate to W. R. Noah, Harper’s son-in-law.
During the time the property was being advertised Harper also approached the other co-owner, Dr. John T. Mosley, in an effort to acquire his interest, representing to Dr. Mosley that he was endeavoring to regain the ownership of the entire property for the Harper family, and that he had already acquired all of the other outstanding interests. As a result of these negotiations Mosley and Harper reached an agreement whereby Mosley was to convey his one-sixth interest to Noah for the same price he had paid for it when he acquired it from Maud Harper, plus interest on this purchase price. These negotiations were never consummated. On the day of the sale, Dr. Mosley, thinking the deal he had made with Harper to convey his interest to Noah had fallen through, deeded his interest to Dr. S. R. Jenkins for the same consideration he had paid for it, in order that Dr. Jenkins could earn any profit that might be realized from a public sale of the property by the sheriff. Shortly before the sale Harper returned to Dr. Mosley and stressed the fact that Noah wanted to keep the property in the family and that the property was being sold to cure any possible defect in the title. Upon these representations Dr. Mosley had Dr. Jenkins execute a deed to W. R. Noah. No consideration was paid at this time, but the parties agreed that if any member of the Harper family acquired the property at the sale which was to be held that day, then Dr. Jenkins and Dr. Mosley were to receive for the one-sixth interest the return of the purchase price of $1,500 plus $90 interest, and that, on the other hand, if the property was sold by the sheriff to some person not a member of the Harper family, then Dr. Mosley and Dr. Jenkins were to receive a full one-sixth of the price realized by the sheriff for the sale of the property, with $1,590 thereof going to Dr. Mosley and the excess if any to Dr. Jenkins. After the sale $1,590 in cash was paid by Noah to Dr. Mosley to reimburse him for the amount he had paid Maud Harper for the one-sixth interest in the property, plus interest on the purchase price.
At the time the judgment of partition was rendered, Noah was the owner of an undivided one-half, or three-sixths, interest, and he claims an additional two-sixths because of his subsequent acquisition of a one-sixth interest from the Olla State Bank and another one-sixth interest from Dr. Jenkins. After the sale Noah demanded of the sheriff five-sixths of the proceeds realized by the sale. The sheriff refused to pay him five-sixths of the total purchase price. Thereupon Noah filed in the original partition suit a mandamus proceeding against the sheriff to obtain a judgment ordering the sheriff to pay him five-sixths of the total purchase price. The sheriff answered admitting that he had refused to pay Noah the amount claimed, but alleging that he had been ordered in the partition judgment to divide the proceeds among the original litigants in the proportions set out in the judgment, and that the court had issued no further order changing the distribution of these funds.
About this time and before the distribution of the fund, Dr. Mosley and Dr. Jenkins filed a motion in the partition pro *50 ceeding setting forth the agreement with reference to the sale of the property which we have explained above, and alleging that they had relied on these representations by Harper, which were fraudulent, and that Noah was aware of these representations made by his father-in-law. They prayed that they be paid one-sixth of the proceeds of the sale less the $1,590 which they had already received.
To the motion filed by Dr. Mosley and Dr. Jenkins, Noah, appellant here, filed an exception of no cause or right of action. On appeal to this court he contends that Dr. Mosley and Dr. Jenkins had no standing to assert in a summary motion matters that can only properly be the subject of an ordinary proceeding based upon petition, service, citation, and ordinary delays.
Under the original judgment of partition Noah was entitled to only a three-sixths interest and Dr. Mosley was entitled to a one-sixth interest. After the sale appellant Noah instituted what he called a mandamus proceeding directed only against the sheriff, seeking an order of the court directing the sheriff to pay him five-sixths of the proceeds instead of the three-sixths to which he was entitled under the partition judgment. It was only then that Dr. Moseley and Dr. Jenkins came in by simple motion claiming that they were entitled to one-sixth of the proceeds.
Evidently the trial judge treated these pleadings as simple motions filed in the partition proceeding itself, authorized under the provisions of Article 1026.6 of the Code of Practice and Article 1335 of the Civil Code, both of which provide that all incidental matters which arise in a partition suit shall be decided on simple motion of the interested party. See also' Article 1290, Civil Code. The sole issue raised by these pleadings was a determination of which of these parties was entitled to receive the disputed one-sixth of the proceeds from the sale of the property. This is a matter incidental to the partition itself, and one that can be determined by simple motion of any party at interest under the provisions of the Civil Code and the Code of Practice cited above. The trial judge correctly refused to dismiss appellees’ motion.
After trial on the merits there was judgment decreeing Dr. Mosley and Dr. Jenkins to be entitled to one-sixth of the proceeds of the sale of the property less the costs of court, minus $1,590, and the sheriff was authorized to make this payment.
After reading the testimony in this case we cannot say that the trial judge erred in the conclusions he reached. It is true that Noah claimed that his father-in-law was the real purchaser of Mosley’s interest, but he himself admitted on the witness stand that Harper was acting as his agent in negotiating with the other owners of the property for the sale of their respective interests. The trial judge states in his reasons for judgment:
“Dr. Mosley testified on the trial that for some time prior to this sale, the interest which he had bought from Mrs. Maud Harper for the sum of $1,500, he had agreed to return this land to Mr. Harper on the representation that Mr. Harper wanted to keep the place in his family and that on the date of the sale he agreed to convey it for just his actual investment plus 8% interest on the money on the condition that the land was bought in and kept by the Harper family but that if anyone else bought it in, then he was to receive the excess of the proceeds. The Court is convinced beyond any question whatsoever that in truth and in fact Mr. Harper is the owner of this interest in the land and that Mr. Noah was acting to protect Mr. Harper because of the fact that Mr. Harper had numerous judgments against him and in general is considered to be judgment proof. The Court accepts and believes that without any question whatsoever Mr. Harper made every repre *51 sentation to Dr. Mosley and Dr. Jenkins that they stated that he did and that Mr. Noah had full knowledge of it and concurred in those representations. The Court further feels that an active fraud, fraud in fact was practiced upon Dr. Mosley and Dr. Jenkins in that at the same time that they took this sale from him for the price of $1,500 which is $25 an acre, that they had just paid Olla State Bank the sum of $4,000 for an equal i/£ interest and that would be at the rate of roughly $66 per acre. * * * The Court being convinced of the truth of the allegations of Dr. Mosley and Dr. Jenkins and feeling that they have been proven in every respect, there will be judgment in their favor. * * * ”
For the reasons assigned the judgment appealed from is affirmed at appellant’s costs.

. The suit for partition by licitation of the tract of land was instituted by the Olla State Bank.